Michael MAYS et al., Plaintiffs in Error,

v.

STATE of Tennessee, Defendant in Error.

Court of Criminal Appeals of Tennessee.

Dec. 1, 1972.

Certiorari Denied by Supreme Court May 7, 1973.

L. D. Miller, Jr., and Marvin B. Berke, Chattanooga, for plaintiffs in error.

David M. Pack, Atty. Gen., Alex B. Shipley, Jr., Asst. Atty. Gen., Nashville, Lawrence Young and John W. Goza, Jr., Asst. Dist. Attys. Gen., Chattanooga, for defendant in error.

OPINION

JOHN D. TEMPLETON, Special Judge.

The Grand Jury of Hamilton County indicted jointly James Leonard Tolliver, Gregory Wooten, Michael Mays, Bobby Joe Mays and John Muckles for setting fire to a business house by the use of a fire bomb, T.C.A. § 39–5106. Tolliver and Wooten plea bargained out, probably on an attempt to commit the crime which is covered by T.C.A. § 39–5109, took two to five years imprisonment, and turned State's witnesses. On the trial the other three were convicted of the crime charged in the indictment and sentenced to five to fifteen years. On their appeal in error we reverse the judgment and remand for a new trial mainly because we think plaintiffs in error were convicted on the uncorroborated testimony of accomplices.

Tolliver testified that he and the four charged in the indictment, along with others, participated in setting fire to a business house in Chattanooga known as Dolob Factory Outlet on the night of May 23, 1971 by preparing and casting onto the building glass bottles containing gasoline with rag wicks soaked in gasoline. These devices, called fire bombs or molotov cocktails, when lighted and thrown will on impact efficiently ignite combustible material. Considerable damage was done to Dolob's store before the fire department could put out the fire. Tolliver was impeached by cross examination after which the State over objection introduced his confession made during the investigation which implicated the defendants. The theory was the statement was admissible to rehabilitate Tolliver's credibility which had been damaged on cross examination. Wooten also testified about the preparation and throwing of the bombs but his testimony involved Muckles and others in the crime, not the Mays boys as Tolliver's had done.

Officer McCutcheon testified that he helped investigate the crime. In connec-

tion with arresting Muckles he said he gave Muckles his Miranda rights and Muckles said he understood them. However, Muckles did not expressly waive his rights and on being questioned denied the charge. McCutcheon then testified over objection that Muckles said, "that he and his car were down there that night but nothing was going on; he didn't take part in anything, and at that he cut it off and stated he wanted to see his attorney".

The witnesses Vincent Gipson and Gregory Hall were introduced by the State but professed to know nothing that would tend to show the defendants committed the crime. Whereupon the State over objection examined them on their written and sworn statements made to the police during the investigation incriminating Muckles and Bobby Joe Mays; but, it appears, not incriminating Michael Mays. The statements finally were introduced and shown to the jury. Both Gipson and Hall repudiated the statements, one claiming that he did not make his and the other claiming that he made his but it was not true. The State depended entirely on their testimony to corroborate the accomplices except insofar as Muckles' statement to the police officer tended to corroborate as to him. The State knew the witnesses had repudiated their statements at the preliminary hearing earlier and would repudiate them when put on the witness stand in this case. It is not clear that they were indispensable witnesses, there being other witnesses to the crime, but the State contended they were and they will be treated as such here.

The defendants took the witness stand and denied the charge, relying on alibi. Muckles explained away his statement to the officer that he and his car were "down there" on the night of the crime.

■ The first assignment of error is it was error to allow the police officer to testify that Muckles said in effect he and his car were in or near the place of the crime. It is said Muckles had not waived his right to remain silent. The rule is that once a defendant has been informed of his rights and indicates he understands them, his choosing to speak and not requesting a lawyer is sufficient evidence that he knows his rights and chooses not to exercise them. The attendant facts must show clearly and convincingly that he did knowingly, intelligently and voluntarily relinquish his rights but a statement by him to that effect is not essential. McGee v. State, 2 Tenn.Cr.App. 100, 451 S.W.2d 709 (1970). We think that taking into account the absence of any affirmative waiver, the connection of the exculpatory and inculpatory parts of the statement which statement Muckles no doubt regarded at the time as wholly exculpatory, and the immediate termination of the interview by Muckles' demand to see his attorney, there was no satisfactory proof of a waiver. The first assignment of error, which applies to Muckles only, is sustained.

■ The second assignment of error is it was error to allow the police officer to testify that Muckles terminated the interrogation to consult his attorney. We think this was a showing by the State that Muckles "claimed his privilege in the face of accusation" which is "impermissible". Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), Footnote 37. The second assignment, as to Muckles, is sustained.

■ The third and fourth assignments of error complain that it was error to allow the State to examine Gipson and Hall on their out of court statements and introduce the statements into evidence. The general rule is that a party may not impeach his own witness but this is subject to the exceptions, (1) where a party is compelled to call an indispensable witness and, (2) where the witness is hostile and takes the party by surprise. The rule is further said to be that impeachment of one's own witness is limited to those cases where his testimony is in direct contradiction to his prior statements and he cannot be impeached where he is merely reluctant to

give testimony or unless the testimony is actually prejudicial. King v. State, 187 Tenn. 431, 215 S.W.2d 813 (1948).

The reason for the last part of the rule is pointed out in one of our statements of case law. It is said that if the witness' testimony is not prejudicial to the party calling him credibility is immaterial and there is no reason for impeachment. It is said in substance that to permit it would give the party a device to put before the jury a statement having all of the effect of independent substantive testimony. 58 Am. Jur., Witnesses, Sec. 800. As already alluded to, the State did not impeach on the theory of surprise but on the theory that it was compelled to call indispensable witnesses. We have assumed the ground proceeded on to be well founded. However, the witnesses professed to know nothing about the crime, were merely reluctant to give testimony, testified to nothing prejudicial to the State. Under these circumstances there was nothing to impeach. Impeachment was calculated to and did serve only one purpose which was to put before the jury the out of court statements. There is no charge by the Judge in the record that the statements could not be used as substantive evidence and such a charge might have been ineffectual if it had been given. It would have been difficult to wipe away with a charge the impression on the jurors' minds that the contents of the statements could be looked to as evidence of the facts stated in them. We think it was error to permit the State to impeach the witnesses and introduce their out of court statements. The third and fourth assignments of error are sustained.

Plaintiffs in error have not raised specially the next question to be taken up but we reach it in considering the eighth assignment of error which is the Judge should have directed a verdict of acquittal. We think he should have because the convictions stand on the uncorroborated testimony of the accomplices. It is, of course, a rule in our State that one may not be convicted of a felony on the uncorroborated testimony of an accomplice. Very little corroboration is required to satisfy the rule but the corroboration must, taken by itself, lead to the inference the accused is implicated in the crime. If there is any corroboration the case goes to the jury but if there is none it is resolved by the Court. Wallis v. State, 1 Tenn.Cr.App. 756, 450 S.W.2d 43 (1970). It is another rule that out of court statements made by a witness and used by the party calling him to the witness stand are to be considered only in weighing his testimony and not as evidence of the facts stated. Such statements may not be used as corroboration. King v. State, supra.

We have said that none of the out of court statements made by Gipson and Hall and by Muckles is admissible for reasons already assigned. Since the State depended entirely on these for corroboration of the accomplices there is no corroboration and the State's case is not lawfully made out. Even if it could be said that the statements are admissible none purported to implicate Michael Mays and the conviction must fail as to him on that account. And the statements of Gipson and Hall implicating Bobby Joe Mays and Muckles are not evidence of the facts stated in them in accordance with the rule referred to in King v. State supra, which invalidates the conviction as to them. We think also that the admission Muckles made to the officer, "that he and his car were down there that night but nothing was going on", is insufficient to corroborate the accomplices as to him. The eighth assignment of error is sustained.

The fifth assignment of error complains that the State failed to furnish the names of Tolliver and Wooten as witnesses. They were not listed as such on the indictment since they were defendants and pleaded guilty just before the other defendants were tried. Notwithstanding the development counsel for plaintiffs in error

interviewed Tolliver and Wooten. No prejudice resulted. The fifth assignment is overruled.

■ The sixth assignment of error is the Judge erred in allowing Tolliver's confession into evidence. The confession, which implicated plaintiffs in error, was introduced by the State after Tolliver had been impeached by cross examination including a showing that he plea bargained successfully. Tolliver made the statement when arrested several months before the trial. As a general rule a witness may not be corroborated by prior consistent statements but there are exceptions one of which is where cross examination tends to show the testimony is the result of recent influence. We think the confession was admissible under this exception and overrule the assignment. Farmer v. State, 201 Tenn. 107, 296 S.W.2d 879 (1956); State v. Jones, 215 Tenn. 206, 385 S.W.2d 80 (1964). Again, the confession is not substantive evidence and should be accompanied by proper instructions to the jury but no objection is interposed for the absence of instructions.

■ The seventh and tenth assignments of error complain the Judge refused to charge the jury on possessing, manufacturing and disposing of, and conspiracy to use a fire bomb. It appears that the Judge charged on setting fire to a building with a fire bomb and attempt to commit the crime. We think the Judge was right and overrule the assignment.

■ The ninth assignment complains in one instance that there was no proof the objects used were fire bombs as defined in T.C.A. § 39–5113. A part of the definition of a fire bomb is that the flammable liquid in the bottle must have a flash point of 150 degrees Fahrenheit or less and the State offered no proof on that. Flash point is the lowest temperature at which the vapor of a combustible liquid can be made to ignite in the air. Webster's Dictionary. We know that gasoline vaporizes and the vapor can be made to ignite in the air at a temperature much below 150 degrees Fahrenheit. We think the jury knew that too and it was not necessary to prove to it the flash point of gasoline. It is further complained in the assignment that the indictment spells Dolob's name as Dolor. The indictment does contain the typographical error in one place but the whole expression is "the business house of David M. Dolor, an individual doing business as Dolob Factory Outlet" which we think is an adequate description of ownership. The ninth assignment is overruled.

The first, second, third, fourth and eighth assignments of error are sustained and the others are overruled. The judgment is reversed and the case as to all three plaintiffs in error is remanded for a new trial.

RUSSELL and OLIVER, JJ., concur.