STATE of Tennessee, Appellee,

v.

William Carroll KELLEY and Phillip
Wayne Kelley, Appellants.

Court of Criminal Appeals of Tennessee,
at Nashville.

Sept. 24, 1984.

Permission to Appeal Denied By
Supreme Court Dec. 17, 1984.

William M. Leech, Jr., Atty. Gen. & Reporter, Jerry L. Smith, Asst. Atty. Gen., Nashville, Thomas M. Bottoms, Dist. Atty. Gen., Lawrenceburg, for appellee.

Jerry Colley, Delk Kennedy, Columbia, for William Carroll Kelley.

William A. Graham, Robert L. Holloway, Columbia, for Phillip Wayne Kelley.

## OPINION

O'BRIEN, Judge.

William Carroll Kelley and Phillip Wayne Kelley were brought to trial in the Giles County Criminal Court on a change of venue from Maury County. They were charged and convicted on three counts of first degree murder and one count of assault with intent to commit murder. They were sentenced to three terms of life imprisonment on the murder convictions and twenty-five years on the assault conviction. The sentences are to be served consecutively.

In summary the evidence shows that on June 23, 1982, a number of the members of the Estis family were fishing on a sandbar at a place called Vaughn's Landing, in the Duck River in Maury County, Tennessee. They had noticed a tent pitched on a bluff above the river and Gary Estis had seen and recognized the campers as, "two boys from Culleoka". Suddenly, without warning, a fusillade of shots centered on the Estis family from the bluff above the river. When the shooting ceased, three of the family members, Gary Estis, his wife Diane, and his mother, Hazel Estis had been killed. J.T. Estis, his father had been wounded. The defendants fled the scene. Shortly a police investigation centered on them and they were found at the home of William Carroll Kelley in Columbia. A search of the dwelling turned up a .22 caliber revolver which proved to be one of the weapons used in the assault on the Estises. Phillip Kelley led police officers to two .22 caliber rifles which had been hidden near the scene of the shooting. One of these belonged to him and one to William Kelley. Subsequent testing disclosed that

these weapons too were used in the shooting on the river. William Kelley gave a statement in which he admitted he had been camping at the place on the river where the shooting occurred but denied any knowledge or participation in it. Phillip Kelley gave a statement incriminating himself and William Kelley in the shooting. He offered no explanation and told the officers he did not know why it happened. Included in his statement was the comment that he was taking "speed" at the time the incident occurred. There was much other testimony and evidence all pointing directly to the defendants as having committed a wanton, unprovoked, and senseless assault on the Estis family, including the testimony of a witness, Bobby Roland, who said William Kelley had told him there had been a shooting on the Duck River and that he had "shot one that didn't move."

Each of the defendants say it was error to deny motions for severance, and each of them assess different reasons.

■ William Kelley first calls up the proscription of *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), against admission of an incriminating statement by a non-testifying codefendant in order to preserve the right of an accused to confront witnesses against him. As our Supreme Court said in *State v. Elliott*, 524 S.W.2d 473 (Tenn.1975), "the *Bruton* rule proscribes, generally, the use of one codefendant's confession to implicate the other as being violative of the nonconfessing codefendant's Sixth Amendment right of confrontation." Specifically, *Bruton* holds that admission of a nontestifying codefendant's confession implicating a defendant at a joint trial constitutes prejudicial error even in the light of clear, concise and understandable instructions that the confession could only be used against the codefendant and must be disregarded with respect to an accused. Defendant also strongly relies on *Elliott*, supra, for the admonition that where a confession of a non-testifying codefendant contradicts, repudiates, or adds to material statements in the confession of other non-testifying codefendants, so as to expose the latter to an increased risk of conviction or to an increase in the degree of the offense with correspondingly greater punishment, the latter is entitled to test the veracity of the statements in the confession of the former. Neither *Bruton* nor *Elliott* are applicable to the facts in this case. Phillip Kelley's redacted confession did not implicate William Kelley in the homicides in any fashion, or form whatsoever. His confession did not mention William Kelley, did not contradict, repudiate, nor add to any material statement in William Kelley's confession as to expose him to an increased risk of conviction. The sentences in this case were the same for both defendants. There was no denial of confrontation, there was no abuse of discretion on the part of the trial court in denying a severance to William Kelley.

■ Phillip Kelley says a severance should have been granted because defenses between him and his codefendant were antagonistic in that he was admitting his participation in the homicides but was endeavoring to mitigate the degree of his participation while William Kelley disavowed any involvement in the crime. He has failed to show how he was prejudiced by William Kelley's defense and we find no abuse of discretion in denial of a severance on that basis.

■ He further says his confession, which was redacted to prevent a denial of confrontation on the part of his codefendant, should have been admitted in its entirety to protect his right against self-incrimination. He cites several cases touching on the issue, specifically, *State v. Robinson*, 622 S.W.2d 62 (Tenn.Cr.App.1980), to sustain the contention that redaction was a violation of his right against self-incrimination. The facts involved in *Robinson* create a distinction which does not exist in this case. In *Robinson* two codefendants each admitted their complicity in a robbery but endeavored to lay the blame on the other for the murder of the robbery victim. This obviously is not the factual basis in this case. There was nothing ex-

culpatory of Phillip Kelley redacted from his confession.

Tenn.R.Crim.P. 14, dealing with severance of defendants, provides in pertinent part:

"14(c)(1) If a defendant moves for a severance because an out-of-court statement of a codefendant makes reference to him but is not admissible against him, the court shall determine whether the State intends to offer the statement in evidence at trial. If so, the court shall require the prosecuting attorney to elect one of the following courses:

(i) a joint trial at which the statement is not admitted into evidence or at which, if admitted, the statement would not constitute error; or

(ii) a joint trial at which the statement is admitted into evidence only after all references to the moving defendant have been deleted, if, as deleted, the confession will not prejudice the moving defendant; or

(iii) severance of the moving defendant.

(2) The court, on motion of the State or on motion of the defendant other than under subdivision (c)(1), shall grant a severance of defendants if:

(i) before trial, ... it is deemed appropriate to promote a fair determination of the guilt or innocence of one or more defendants; or:

(ii) during trial, with consent of the defendant to be severed, it is deemed necessary to achieve a fair determination of the guilt or innocence of one or more defendants."

■ Motions for severance were made pretrial, at the opening of the trial, at the close of the State's proof, and at the close of all the evidence. We are satisfied that it was not reversible error to deny a severance to either of these defendants under the facts of this case. Moreover, in addition to the summary of the evidence we have included in this opinion, there was a wealth of testimony and physical evidence in the record which clearly and unerringly pointed to these defendants as the respon-

sible parties for the homicides and the assaults on the victims in this case. If it could arguably be said that it was error to deny a severance to either of the defendants it was harmless beyond a reasonable doubt. *State v. Elliott,* supra; T.R.A.P. Rule 36(b).

■ Both defendants assert error and insist they were entitled to a mistrial because a large stick, inscribed with the initials WCK and a number of vulgarities, was brought into the courtroom and mistakenly placed with a group of items which the State intended to introduce as exhibits. When it became apparent the stick was not to be made an exhibit it was moved out of sight in the courtroom. The stick was in view of the jury for about ten minutes. No objection was made until a subsequent recess. The trial judge denied a motion for mistrial finding that the jury saw little of what was carved on the stick and that the impact of its presence was not sufficient to warrant such action. Defense counsel declined to have the judge deliver any curative instructions to the jury on the theory that such instructions would direct their attention to the stick. We agree with the trial judge that there was no manifest necessity for declaring a mistrial. See *Arnold v. State,* 563 S.W.2d 792, 794 (Tenn. Cr.App.1977). There was no abuse of discretion. *State v. Compton,* 642 S.W.2d 745, 746 (Tenn.Cr.App.1982).

William Kelley submits that he should have been granted a new trial because a portion of his pretrial statement in which he requested counsel was read to the jury. This occurred when an Assistant District Attorney was reading the statement of Kelley into the record. The statement concluded with the remark by the Attorney General that they had another statement from Phillip Kelley. William Kelley's response to that comment was, "I think I need a lawyer". He was immediately advised that he did not have to say anything further unless he wished to, and indicated he did not. At this point the trial judge instructed the jury that defense counsel's objection was appropriately made to introduction of

any evidence of Kelley's request for counsel or his desire to remain silent. The jury was advised not to infer anything from his request because he had a constitutional right to not respond to further questioning and to legal counsel.

Defendant relies on a statement in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 1624, 16 L.Ed.2d 694 (1966), at Footnote 37, in which the court said:

"In accord with our decision today, it is impermissible to penalize an individual for exercising his Fifth Amendment privilege when he is under police custodial interrogation. The prosecution may not, therefore, use at trial the fact that he stood mute or claimed his privilege in the face of accusation. (Citations omitted)."

Our Tennessee Courts have ruled on similar issues in several cases since *Miranda*, one of which, *Mays v. State*, 495 S.W.2d 833 (Tenn.Cr.App.1972), is cited by defendant. In *Mays* a police officer testified that a defendant terminated interrogation to consult his attorney. The court held this to be a showing by the State that the defendant had claimed his privilege in the face of accusation, which was impermissible. The case was reversed for this as well as a number of other errors. On the otherhand, the State cites *Harrison v. State*, 532 S.W.2d 566 (Tenn.Cr.App.1975), in which the District Attorney General elicited the testimony from a witness that the defendant refused to make any statement after being advised concerning his constitutional rights. This Court held it was improper for the State to seek out this testimony from the witness in the light of the absolute and inviolable constitutional right of an accused to remain silent. We held that under the facts of the case, coupled with a specific instruction from the court to the jury that a person in custody who has been advised of his rights is not obligated to make any statement, that the incident did not trench upon the defendant's constitutional rights to the degree which would nullify his trial and conviction. In *State v. Flanagan*, 443 S.W.2d 25, 223 Tenn. 134 (1969), a defendant was arrested and taken to the police station. Prior to being given *Miranda* type warnings he made a phone call to his attorney and then stated to the police "I am not going to tell you anything further. I don't have anything to say." The admission of this statement of the defendant into evidence was cited as error. After an analysis of the relevant portion of *Miranda* the court felt the testimony did not fall within the ambit of the admonition included in Footnote 37. In *Ware v. State*, 565 S.W.2d 906 (Tenn.Cr.App.1978) the court, recognizing a defendant's constitutional right to remain silent in the face of accusations against him, held that when a defendant gave the police an exculpatory statement it was not improper for an officer to testify that he didn't say anything else, or that he wouldn't give a statement at the police station, on the theory that the defendant had not elected to remain silent in the fact of accusation. In *Holt v. State*, 591 S.W.2d 785 (Tenn.Cr.App.1979) a defendant had been advised of his *Miranda* rights and had signed a waiver. He then gave an exculpatory statement to the sheriff. The sheriff testified he had refused to sign the statement. The court followed *Ware*, supra, in holding that the defendant had not elected to remain silent and there was no abuse of his privilege to do so by admission of the testimony that he refused to sign the statement. The court declared that the admission of the evidence was not prejudicial to the defendant.

■ We are convinced that this is the appropriate ruling in this case. The admission of defendant's statement "I think I need a lawyer", into evidence, has every semblance of being inadvertent. The officer taking the defendants' statement immediately responded, "all right, you don't have to say another word. Do you wish not to make any other statement, any further statement, is that your wish?" The interrogation was then concluded without further questions. The court immediately admonished the jury as we have set out heretofore. The statement given by him was intended to be completely exculpatory. He had been fully advised of his rights.

There was other evidence that he had made admissions to a contemporary, which were properly admitted into evidence, involving himself fully in the homicides. Two of the weapons used in the killings were owned by him. One of these was found in his home, and the other found near the scene of the homicides where the police had been directed to search by his codefendant. It is inconceivable that the evidence complained of might have contributed to the conviction, and we are satisfied that its admission was harmless beyond a reasonable doubt. See *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

Phillip Kelley further says that his confession to the police should have been suppressed because it was involuntary. He says he was under the influence of drugs at the time of the confession; he has a sub-normal mental capacity; the police officer who took his statements was a relative with whom he had a close personal relationship; and the State failed to carry the burden of proving the confession was voluntary.

■ Our reading of this record indicates that is no evidence, except Phillip Kelley's uncorroborated testimony, that he was under the influence of any drug of any type at the time he gave his statement to the police. To the contrary, laboratory tests of his blood and urine indicate otherwise, as did the testimony of the arresting officers. This issue is dismissed. There is nothing in this record to indicate his mental capacity to be sub-normal. He was given various psychological tests which indicated his IQ was borderline, low average. Although he was a grade school drop-out there was nothing in the evidence to indicate that he was not fully competent to give the confession. This issue is dismissed. We have also examined the evidence on the assertion that the defendant was over-reached because one of the interrogating officers was his maternal uncle. Defense counsel earnestly endeavored to show that defendant was influenced by the interrogating officer because of their family and personal relationship. We find nothing in this record to

sustain that contention. After an extended and extensive suppression hearing in which a very patient and thorough trial judge gave defense counsel every opportunity to introduce evidence that this defendant's confession was involuntary, he found this was not the case. We are wholly in accord with his judgment on this issue.

■ Defendant says the trial court should have instructed the jury that the law presumes a murder to be in the second degree once a killing is established. It is a correct statement of law to say a murder is presumed to be in the second degree, and that the burden is upon the prosecution to show the premeditation or deliberation necessary to raise the crime to first degree. *State v. Bullington,* 532 S.W.2d 556, 560 (Tenn.1976); *State v. Story,* 608 S.W.2d 599, 601 (Tenn.Cr.App.1980). The circumstances of a homicide may furnish the necessary proof of premeditation, such as death resulting from repeated shots or blows. *Bullington,* supra; *Story,* supra. The evidence adduced at this trial shows the killings to be willful, deliberate and malicious. Each victim was shot at least twice. One victim was shot a third time at close range. There was no explanation from either defendant for this senseless slaughter. The evidence preponderates heavily in favor of first degree murder. The trial court correctly instructed the jury on the lesser included offense of second degree murder as well as all lesser degrees of homicide. When jury instructions given are full, fair, and accurately state the law, there is no requirement that special instructions be given. *State v. Chestnut,* 643 S.W.2d 343, 352 (Tenn.Cr.App.1982). This issue is without merit.

■ It is insisted the trial court should have instructed the jury that the redacted statement of defendant was a summary and did not purport to relate all that he may or may not have informed the police about the activities of any other person on that day. The trial court, in denying this request, found the request to be an improper comment on the evidence which might result in a violation of *Bruton,* supra. The

record shows that Phillip Kelley's statement was presented to the jury, and referred to as a summary of conversation between defendant and Officer Harris. This defendant has failed to show any prejudice from denial of the requested instruction. We concur with the ruling of the trial judge on this issue.

 Dr. Ben Bursten, a forensic psychiatrist, testified on behalf of the defendant, Phillip Kelley. Defendant contends the trial court should have permitted examination of Dr. Bersten concerning his opinion based on subjective findings and statements made to him relative to the defendant's ingestion of drugs. These statements were not in the record. The trial court ruled that statements made by defendant to a psychiatrist were not admissible and the psychiatrist must limit his testimony to responses to hypothetical questions, or to tests which he actually conducted. He reasoned that to do otherwise would enable a defendant to introduce evidence into the record upon which the State would have no right of cross-examination. This ruling was correct. The defendant requested the court to apply the provisions of T.C.A. Sec. 24–7–114 which applies to the admission of medical opinions based on subjective findings in civil cases. This reasoning is not applicable in criminal cases for the reasons we have discussed.

We have thoroughly read this record and have found no reason why the judgment of the trial court should not be affirmed.

Judgment affirmed.

DUNCAN and SCOTT, JJ., concur.