IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT JACKSON

JANUARY 1997 SESSION

FILED

July 23, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | No. 02-C-01-9601-CR-00012 |
| Appellee, | ) | |
| | ) | Shelby County |
| v. | ) | |
| | ) | Joseph B. Dailey, Judge |
| TERRY W. COPELAND, | ) | |
| | ) | (First Degree Murder) |
| Appellant. | ) | |

FOR THE APPELLANT:                    FOR THE APPELLEE:

ON APPEAL:                            John Knox Walkup
Marvin E. Ballin                      Attorney General & Reporter
200 Jefferson, Suite 1250            500 Charlotte Avenue
Memphis, TN 38103                     Nashville, TN 37243-0497

Mark A. Mesler                        Susan Rosen
200 Jefferson, Suite 1250            Assistant Attorney General
Memphis, TN 38103                     450 James Robertson Parkway
                                      Nashville, TN 37243-0493
AT TRIAL:
Edwin C. Lenow                        William L. Gibbons
100 North Main Building               District Attorney General
Suite 2325                            201 Poplar Avenue, Suite 3-01
Memphis, TN 38103                     Memphis, TN 38103

                                      Phillip G. Harris
                                      Assistant District Attorney General
                                      201 Poplar Avenue, Suite 3-01
                                      Memphis, TN 38103

                                      Rhea Clift
                                      Assistant District Attorney General
                                      201 Poplar Avenue, Suite 3-01
                                      Memphis, TN 38103

OPINION FILED: _____

AFFIRMED

Joe B. Jones, Presiding Judge

# OPINION

The appellant, Terry W. Copeland (defendant), was convicted of murder in the first degree by a jury of his peers. He was sentenced to life in the Department of Correction. The defendant presents two issues for review. He contends (a) the evidence is insufficient, as a matter of law, to support his conviction because the State of Tennessee failed to establish the elements of first degree murder, and (b) the trial court committed error of prejudicial dimensions by failing to give the defendant's special request setting forth a definition of "passion." After a thorough review of the record, the briefs, and the law governing the issues presented for review, it is the opinion of this Court the judgment of the trial court should be affirmed.

On the evening of May 27, 1994, the defendant saw his mother's vehicle parked at the Rugby Bar, which is located in the Frayser area of Memphis. He called the bar from across the street and asked for his mother. He wanted to know if Farrell D. "Doug" Goggins, the victim, was inside the bar. His mother asked him to come to the bar and have a beer with the people seated at her table. The defendant went across the street to the bar and visited with his mother, stepfather, and the other people who were at the table.

The defendant saw the victim enter the establishment and take a seat at the bar. He exited through a side door. The defendant returned to the bar through the front door approximately ten minutes later. He was carrying a baseball bat. The victim had his back to the front door and apparently never saw the defendant enter the bar. The defendant brutally attacked the victim from the rear without warning. He repeatedly struck the victim's head, shoulder, and leg with the baseball bat. One of the blows caused the victim to fall to the floor. The defendant continued to strike the victim while he lay on the floor.

Patrons of the Rugby Bar on the night in question testified the defendant was armed with a baseball bat. They identified a baseball bat found by police officers in the defendant's backyard as the murder weapon.

The victim was transported to a hospital. He died the following day due to the injuries he sustained at the hands of the defendant. An autopsy revealed the victim had sustained multiple injuries to the head. There were bruises, tears of the scalp's skin, and

fractures of the skull. The victim's brain was also injured as a result of the blows to the head. There were bruises to the underlying brain and there were hemorrhages to the surface of the brain between the covering of the brain and the brain. The pathologist opined the victim died as a result of the multiple blows to the head. He testified the injuries sustained by the victim were consistent with repeated blows with a baseball bat.

The defendant testified in support of his defense. He stated that he and his brother had gotten into a fight with the victim and a friend of the victim, Jeff Austin, as they were leaving the Rugby Bar two weeks before the incident in question. Austin grabbed the defendant, held him around the head, and pinned him against a pool table. The victim allegedly struck the defendant from the rear with a pool cue while he was being held by Austin. When the defendant was able to break Austin's hold, the defendant and his brother ran and exited the bar. The defendant stated the victim followed them into the parking lot with the pool cue. According to the defendant, the victim threatened to kill him and his brother.

Supposedly, the defendant came in contact with the victim a few days later at a convenience store across from the Rugby Bar. The defendant testified the victim repeated the threat that he was going to kill him and his brother.

The defendant testified the victim saw him inside the bar on the night in question, and the victim pointed his finger at him. Allegedly, someone came to the table and told the defendant to move his vehicle in the parking lot. The defendant exited the bar through the side door, but he did not move his vehicle. When he re-entered the bar, he stated the victim saw him. According to the defendant, he armed himself with a stick used to prop the front door open. He admitted striking the victim with the stick. He denied he intended to kill the victim. He claimed the killing was accidental. Moreover, he saw the victim standing or sitting on a bar stool before he left the bar.

The defendant denied he used a baseball bat to strike the victim. He testified he had never seen the baseball bat found by the police in his backyard.

It appears the defendant claimed self-defense because of his fear of the victim and his threat to kill him. However, a search of the victim's body by the paramedics prior to removing the victim from the bar revealed the victim was not armed.

3

# I.

The defendant contends the evidence contained in the record is insufficient, as a matter of law, to support a finding by a rational trier of fact he was guilty of first degree murder beyond a reasonable doubt. He argues the State of Tennessee failed to prove the elements of deliberation and premeditation.

## A.

When an accused challenges the sufficiency of the convicting evidence, this Court must review the record to determine if the evidence adduced at trial is sufficient "to support the finding by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). This rule is applicable to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. State v. Dykes, 803 S.W.2d 250, 253 (Tenn. Crim. App.), per. app. denied (Tenn. 1990).

In determining the sufficiency of the convicting evidence, this Court does not reweigh or reevaluate the evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App.), per. app. denied (Tenn. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. Liakas v. State, 199 Tenn. 298, 305, 286 S.W.2d 856, 859, cert. denied, 352 U.S. 845, 77 S.Ct. 39, 1 L.Ed.2d 49 (1956). To the contrary, this Court is required to afford the State of Tennessee the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, not this Court. Cabbage, 571 S.W.2d at 835. In State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973), our Supreme Court said: "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State."

4

Since a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused, as the appellant, has the burden in this Court of illustrating why the evidence is insufficient to support the verdicts returned by the trier of fact. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). This Court will not disturb a verdict of guilt due to the sufficiency of the evidence unless the facts contained in the record are insufficient, as a matter of law, for a rational trier of fact to find that the accused is guilty beyond a reasonable doubt. Tuggle, 639 S.W.2d at 914.

## B.

As the defendant advocates in his brief, the death of a victim caused by the knowing act of the accused is presumed to be second degree murder. State v. Brown, 836 S.W.2d 530, 543 (Tenn. 1992). When the defendant killed the victim in this case, the State of Tennessee was required to prove beyond a reasonable doubt the murder was "intentional, premeditated and deliberate," Tenn. Code Ann. § 39-13-202(a)(1), before the defendant could be convicted of murder first degree. A "deliberate act" was defined as "one performed with a cool purpose." Tenn. Code Ann. § 39-13-201(b)(1). A "premeditated act" was defined as "one done after the exercise of reflection and judgment." Tenn. Code Ann. § 39-13-201(b)(2).

A killing is the result of a "premeditated act" when there is "a previously formed design or intent to kill." State v. West, 844 S.W.2d 144, 147 (Tenn. 1992). A killing is the result of a "deliberate act" when the intent to kill is formed in the absence of passion. Brown, 836 S.W.2d at 540. A "deliberate act" requires some period of reflection during which the mind is free from the influence of excitement." Id.

The elements of premeditation and deliberation are questions for the jury to determine. These elements may be inferred from the circumstances surrounding the killing. State v. Gentry, 881 S.W.2d 1, 3 (Tenn. Crim. App. 1993), per. app. denied (Tenn. 1994). In this case, the evidence was clearly sufficient for a rational trier of fact to find the defendant killed the victim with premeditation and after deliberation. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

5

The defendant's stepfather gave a statement to a police officer the morning after the defendant attacked the victim. The statement, inconsistent with his testimony at trial, was used to impeach the stepfather. The stepfather told the police that the defendant stated he was going to get even with the victim.[1] When asked during cross-examination about the statement made by his stepfather, the defendant did not deny making the statement. He stated he did not make the statement immediately before hitting the victim. He opined the statement was made shortly after the victim had struck him. The facts in this case established the elements of deliberation and premeditation. Those present inside the club stated the defendant was calm and did not indicate any apprehension when the victim entered the club. Instead, the defendant saw an opportunity to get even with the victim as he had previously indicated. He calmly exited the side door of the club. He apparently did not want to alert the victim of his presence inside the club. If he was seen by the victim, it would destroy the element of surprise. He drove to his residence, obtained the bat, drove back to the club, approached the victim from the rear, and repeatedly struck the victim with the bat. Two weeks had passed after the fight with Austin and the victim. This was a sufficient period of time for the excitement of the event to subside. These circumstances establish the victim acted with a "cool purpose" after "reflection and judgment."

This issue is without merit.

## II.

The defendant contends the trial court committed error of prejudicial dimensions by refusing to include a special request submitted by him. The request was a definition of the term "passion." The trial court denied the request.

The term "passion" is a word commonly used by the general population of this State. Further, the term can be understood by the citizens who possess ordinary intelligence.

---

[1]Although the State of Tennessee cites the stepfather's prior statement to support its argument the evidence was sufficient to support the conviction, such evidence is limited in scope to impeachment. The evidence cannot be used as substantive evidence to support the sufficiency of the evidence.

See State v. Raines, 882 S.W.2d 376, 383 (Tenn. Crim. App.), per. app. denied (Tenn. 1994); State v. Braden, 867 S.W.2d 750, 761 (Tenn. Crim. App.), per. app. denied (Tenn. 1993). Thus, the trial court was not required to give the special request offered by the defendant.

As this Court stated in State v. Glenn Bernard Mann, Dyer County, No. 02-C-01-9502-CC-00046 (Tenn. Crim. App., Jackson, August 16, 1996), no court has ever held an instruction on the definition of "passion" must be included in the charge given the jury. To the contrary, this Court held in State v. Kelley, 683 S.W.2d 1, 6 (Tenn. Crim. App.), per. app. denied (Tenn. 1984), a case factually similar to this case, the trial court was not required to give an instruction on the word "passion."

The charge given by the trial court was adequate. The court instructed the jury "[t]he mental state of the accused at the time he allegedly decided to kill must be carefully considered in order to determine whether the accused was sufficiently free from excitement and passion as to be capable of premeditation."

This issue is without merit.

_____
JOE B. JONES, PRESIDING JUDGE


CONCUR:


_____
DAVID G. HAYES, JUDGE


_____
THOMAS T. WOODALL, JUDGE