# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT JACKSON

### AUGUST SESSION, 1997



**FILED**

**October 14, 1998**

**Cecil Crowson, Jr.**

**Appellate Court Clerk**

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | **C.C.A. NO. 02C01-9601-CR-00019** |
| Appellee, | ) | |
| | ) | |
| | ) | **SHELBY COUNTY** |
| **VS.** | ) | |
| | ) | **HON. JOHN P. COLTON, JR.** |
| **TAURYS K. WALLS,** | ) | **JUDGE** |
| | ) | |
| Appellant. | ) | **(Direct Appeal - Felony Murder)** |

FOR THE APPELLANT:

GERALD SKAHAN
140 North Third Street
Memphis, TN 38103

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General and Reporter

WILLIAM DAVID BRIDGERS
Assistant Attorney General
450 James Robertson Parkway
Nashville, TN 37243

WILLIAM L. GIBBONS
District Attorney General

J. ROBERT CARTER, JR.
Assistant District Attorney
201 Poplar Avenue, Third Floor
Memphis, TN 38103

OPINION FILED _____

AFFIRMED

JERRY L. SMITH, JUDGE

# OPINION

Appellant Taurys K. Walls was convicted in the Shelby County Criminal Court on November 3, 1995 of murder in the perpetration of a felony, to wit: robbery. The trial court sentenced Appellant to life imprisonment with the Tennessee Department of Correction and imposed a $50.00 fine to be paid to the Criminal Injuries Compensation Fund. Appellant presents the following issues for our consideration on this direct appeal: (1) whether the evidence was sufficient to sustain Appellant's conviction for felony murder; (2) whether the trial court erred in overruling Appellant's motion to suppress his statement given to police respecting his involvement in the murder of Melvin Charles Ferguson; (3) whether the trial court abused its discretion in prohibiting defense counsel from questioning the victim's brother about a lawsuit that the brother had filed in connection with Ferguson's death; and (4) whether the trial court erred in refusing Appellant's request for a supplemental jury instruction to the effect that all homicides are presumed to be second degree murder.

After a review of the record, we affirm the judgment of the trial court.

## I. FACTUAL BACKGROUND

The proof shows that on June 11, 1993, Appellant and his co-defendant, Maurice Banks,[1] fatally shot Melvin Charles Ferguson after Ferguson thwarted their attempts to rob him. The murder and robbery took place at the Scottish Inn Motel in Memphis, Tennessee.

At trial, the victim's brother, Mr. Joe Ferguson, explained that at the time of the murder, the victim had recently retired from the United States Army and

---

[1] Appellant and his co-defendant were tried separately.

-2-

was seeking employment in the Memphis area. Although Melvin Ferguson had been alternating between his brother's house and his mother's residence in Fort Smith, Arkansas, the victim moved to the Scottish Inn Motel a few days prior to his death in order to afford some privacy to Joe Ferguson and his wife. Mr. Joe Ferguson further testified that as his brother was unemployed, both Joe and his mother occasionally gave the victim money. However, unknown to either Joe Ferguson or his mother, the victim used some of this money to purchase cocaine from various local drug dealers, including Jeffrey Davis.

A few hours before Ferguson's death, Jeffrey Davis accompanied Maurice Banks to the victim's room at the Scottish Inn Motel and sold Ferguson $50.00 worth of cocaine. Mr. Davis testified that after completing the drug transaction, Maurice Banks dropped Davis at Davis' apartment and drove away. Approximately thirty minutes later, Mr. Banks returned to Davis' apartment accompanied by Appellant, who carried a .38 caliber pistol. According to Mr. Davis' testimony, Maurice Banks borrowed Davis' .380 semi-automatic pistol. Banks and Appellant then departed. Upon returning to Mr. Davis' apartment one-half hour later, Appellant informed Jeffrey Davis that he had shot someone at the Scottish Inn.

On June 16, 1993, Appellant was arrested as a suspect in the Ferguson murder. Three days later, on June 19, Appellant gave a statement in which he admitted his involvement in Melvin Ferguson's death. In his confession, Appellant said that on the night of the incident, an individual who he identified as "Bull" (Maurice Banks) picked him up in the parking lot of a Memphis apartment complex and stated that he knew someone that the two of them could rob. Appellant told the police that he carried a .38 caliber handgun and that Bull armed himself with a .380 pistol. The two men drove to the Scottish Inn Motel

and walked to a room on the second floor. After knocking on the door, Appellant and Mr. Banks were admitted by a woman. The victim was in the motel room with the woman.

According to Appellant's statement, after approximately five minutes, Melvin Ferguson asked Appellant and Bull which one of them "was straight," a colloquialism meaning which person had drugs. Appellant replied that Bull was, and Mr. Banks and the victim both moved toward the restroom. Bull drew his pistol and apparently demanded that Ferguson give him money. Mr. Ferguson handed Bull $300.00, went into the bathroom, and closed the door. Once inside, the victim flushed the toilet and stated that he was going to flush the remainder of the money.

Mr. Ferguson emerged from the restroom approximately one minute later, and when Bull asked him the location of the rest of the money, Ferguson replied that he did not know. Bull hit the victim in the head with his pistol. Mr. Ferguson blocked the motel room door with his body and stated that neither Appellant nor Bull could leave the room until they returned his money. After trying for several minutes to persuade Mr. Ferguson to step away from the door, Bull asked the woman where the victim had put the rest of his money. The woman informed Bull that the money was underneath a bush planted outside the motel.

Upon learning the location of the remainder of the money, Bull again asked Ferguson to move away from the door. When Ferguson refused, Bull fired his pistol at the victim's leg, and Appellant also shot at him. Appellant told the police that Ferguson attempted to run down the hallway and away from his assailants. However, Bull shot at the victim a few more times, and Appellant fired two more shots at Ferguson. Appellant and Bull then ran from the building and fled the

scene in Bull's car. Finally, Bull dropped off Appellant at the same apartment complex where the two had met before the incident.

Dr. O'Brian Cleary Smith, an Assistant Medical Examiner for Shelby County, testified that the victim sustained five bullets and died of multiple gunshot wounds. Dr. Smith testified that he recovered only one bullet from the victim's body. He stated that this bullet was located in Mr. Ferguson's abdomen and identified the bullet as being fired from a .38 caliber pistol. Dr. Smith opined that the wound from this bullet alone would have been sufficient to cause Mr. Ferguson's death.

Appellant testified on his own behalf at his trial. Though Appellant conceded his involvement in the incident, Appellant testified that he shot Mr. Ferguson in self-defense. According to Appellant's trial testimony, on the night of the incident, he accompanied Maurice Banks to the Scottish Inn Motel so that Mr. Banks could sell drugs to someone residing there. Appellant denied that he and Mr. Banks ever discussed the possibility of robbing anyone. Instead, Appellant stated that when he and Mr. Banks arrived at Mr. Ferguson's room, the room smelled as though Ferguson and his female companion had been smoking "crack" cocaine. Moreover, both the woman and Mr. Ferguson appeared to be high. Appellant further testified that the victim asked who "was straight."

## II. SUFFICIENCY OF THE EVIDENCE

Appellant's first contention is that the evidence was insufficient to sustain his conviction for murder during the perpetration of a robbery because there is no evidence to demonstrate that Appellant robbed Melvin Ferguson. He further alleges that the trial court erred in overruling his motion for judgment of acquittal. We disagree.

TENN. R. CRIM. P. 29(a) provides in pertinent part, "The court on motion of a defendant. . . shall order the entry of judgment of acquittal of one or more offenses charged in the indictment or information. . . if the evidence is insufficient to sustain a conviction of such offense or offenses." Id. When presented with a motion for judgment of acquittal, the trial court's only consideration is the legal sufficiency of the evidence. State v. Blanton, 926 S.W.2d 953 (Tenn. Crim. App. 1996). Sufficiency of the evidence is the appropriate standard by which both trial and appellate courts evaluate the adequacy of the evidence. State v. Cabbage, 571 S.W.2d 832, 836 (Tenn. 1978).

This Court is obliged to review challenges to the sufficiency of the convicting evidence according to certain well-settled principles. A verdict of guilty by the jury, approved by the trial judge, accredits the testimony of the State's witnesses and resolves all conflicts in the testimony in favor of the State. State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994); State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). Although an accused is originally cloaked with a presumption of innocence, a jury verdict removes this presumption and replaces it with one of guilt. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with Appellant to demonstrate the insufficiency of the convicting evidence. Id. On appeal, "the [S]tate is entitled to the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." Id. (citing State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978)). Where the sufficiency of the evidence is contested on appeal, the relevant question for the reviewing court is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. Harris, 839 S.W.2d 54, 75; Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). In

-6-

conducting our evaluation of the convicting evidence, this Court is precluded from reweighing or reconsidering the evidence. State v. Morgan, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, this Court may not substitute its own inferences "for those drawn by the trier of fact from circumstantial evidence." Matthews, 805 S.W.2d 776, 779. Finally, TENN. R. APP. P. 13(e) provides, "Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." See also Matthews, 805 S.W.2d 776, 780.

At the time of this offense, Tenn. Code Ann. § 39-13-202(a) provided in pertinent part: "First degree murder is: . . . (2) a reckless killing of another committed in the perpetration of. . . robbery." Tenn. Code Ann. § 39-13-202(a)(2) (1991, Repl.).[2] Tenn. Code Ann. § 39-11-302(c) provides:

> (c) "Reckless" refers to a person who acts recklessly with respect to circumstances surrounding the conduct or the result of the conduct when the person is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the accused person's standpoint.

Tenn. Code Ann. § 39-11-302(c).

Tenn. Code Ann. § 39-13-401 defines "robbery" as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. § 39-13-401(a). Tenn. Code Ann. § 39-11-402 states in part:

> A person is criminally responsible for an offense committed by the conduct of another if: . . . (2) Acting with intent to

---

[2] In 1995, the General Assembly amended the definition of felony murder by dispensing with the requirement that the prosecution prove that the killing was reckless. Tenn. Code Ann. § 39-13-202(a)(2) (1997).

> promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense.

Tenn. Code Ann. § 39-11-402(2).

The State is required to prove each and every element of the charged offense.

Appellant asserts that there is no evidence to prove that he robbed the victim because Melvin Ferguson's wallet and over $20.00 were recovered at the scene. The proof at trial demonstrated that both Appellant and his co-defendant, Mr. Banks, armed themselves with pistols before going to the victim's motel room. Moreover, in his confession, Appellant told the police that when Maurice Banks picked him up, he told Appellant that he knew someone that they could rob. Shortly after entering Ferguson's room, Banks drew his pistol and asked the victim for money. The victim handed Banks $300.00 and then went into the restroom. After Ferguson emerged from the bathroom, Mr. Banks demanded to know the location of the remainder of the money. When Ferguson refused to disclose the location of the money, Banks hit the victim in the head with his pistol. The victim then blocked the door to the motel room and announced that no one could leave until they returned his money. Banks again asked where the victim had concealed the money, and Ferguson's female companion disclosed that the money was hidden beneath a bush planted outside the motel. Mr. Banks asked Ferguson to move away from the door, but the victim declined to do so. When the victim refused to move, both Appellant and Banks began shooting their pistols at the victim. Although the victim attempted to escape by running down the hallway and away from his assailants, Appellant and Banks fired more shots at him. An autopsy revealed that Ferguson died of multiple gunshot wounds, at least one of which was inflicted by a .38 caliber pistol. In his confession, Appellant admitted firing a .38 caliber handgun at Melvin Ferguson.

-8-

From this evidence, a rational trier of fact could conclude that Appellant, and his co-defendant, murdered Melvin Ferguson during the course of robbing him. Additionally, the jury also could find that in so doing, Appellant disregarded a substantial and unjustifiable risk that Ferguson would die. Accordingly, the evidence presented at Appellant's trial was sufficient to sustain his conviction for felony murder.

### III. SUPPRESSION OF APPELLANT'S STATEMENT

Appellant next complains that the trial court improperly denied his motion to suppress his statement to police because the statement was taken in violation of the Fifth Amendment to the United States Constitution as well as Article I, § 9 of the Tennessee Constitution. Appellant further asserts that his statement was involuntarily given. The record affords no support for Appellant's assertions.

It is well-settled that the trial court's findings of fact in a suppression hearing are conclusive on appeal unless the evidence preponderates against them. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996); State v. Stephenson, 878 S.W.2d 530, 544 (Tenn. 1994). Our review of the record in this case convinces us that the trial court's findings are amply supported by the evidence.

The Fifth Amendment to the United States Constitution guarantees that "No person. . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. 5. The Fifth Amendment privilege against self-incrimination is applicable to the states through the Fourteenth Amendment. Malloy v. Hogan, 378 U.S.1, 84 S.Ct. 1489, 1492, 12 L.Ed. 653 (1964). Article I, § 9 of the Tennessee Constitution guarantees "That in all criminal prosecutions, the accused. . . shall not be compelled to give evidence against himself." Tenn. Const. art. I, § 9. The court in Stephenson observed that though the federal and

state constitutional provisions are not identical, "the most significant difference between the provisions is that the test of voluntariness for confessions under Article I, § 9 is broader and more protective of individual rights than the test of voluntariness under the Fifth Amendment." 878 S.W.2d 530, 544.

In Miranda v. Arizona, the United States Supreme Court held, "The prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." 384 U.S. 436, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966). These procedural safeguards must be undertaken prior to the initiation of any questioning by law enforcement officials and include the administration of the Miranda rights to the accused. Id. An accused may waive these rights, provided that the waiver is knowingly, intelligently, and voluntarily made. Miranda, 86 S.Ct. 1602, 1612. The government bears the "heavy burden" of proving that the defendant knowingly and intelligently waived his Miranda rights. Id. at 1628. A valid waiver will not be presumed simply from the accused's silence after warnings are administered or from the fact that officers eventually elicited a confession. Lee v. State, 560 S.W.2d 82, 84 (Tenn. Crim. App. 1977). However, both our state and federal courts have held that absent an explicit written waiver, a waiver may be implied from the facts and circumstances of a case. State v. Elrod, 721 S.W.2d 820, 823 (Tenn. Crim. App. 1986); North Carolina v. Butler, 441 U.S. 369, 99 S.Ct. 1755, 1757, 60 L.Ed.2d 286 (1979).

At the hearing on Appellant's motion to suppress his statement, Sergeant Ronald Wilkinson of the Memphis Police Department testified that Appellant was arrested on the afternoon of June 16, 1993. Sergeant Wilkinson further testified that he acted as the arresting officer on that day because Sergeant Samuel

Williams, the lead officer on the Ferguson case, was not on duty. Wilkinson stated that on June 16, he did not attempt to question Appellant respecting the incident. Additionally, Sergeant Wilkinson averred that if an arrestee requested an attorney, this would be noted in the arrestee's case file. Finally, he stated that no such notation existed in Appellant's file. Sergeant Samuel Williams testified that on June 19, 1993, Williams had Appellant brought to his office. Williams said that he was "sure" that he administered Appellant his Miranda rights before speaking with him. Sergeant Williams then engaged Appellant in an informal discussion concerning the events surrounding Melvin Ferguson's death. Finally, when Appellant "decided he'd tell" Sergeant Williams what Williams "felt was the truth," Williams asked Appellant if he would be willing to give a formal statement. When Appellant affirmed his willingness to give a statement, Williams again advised Appellant of his Miranda rights. A typist transcribed Sergeant Williams' questions and Appellant's responses. After being read his rights, Appellant acknowledged that he understood those rights. When Sergeant Williams had completed Appellant's interrogation, he asked Appellant to read over the statement to ensure its correctness, to initial every page, and to sign and date the last page. Appellant incorrectly dated his statement "6/20/93."

On cross-examination, Sergeant Williams acknowledged that on the day that Appellant was arrested, Appellant informed a member of the police department that he did not wish to give a statement and that he knew nothing about Mr. Ferguson's death. Sergeant Williams also stated that he did not know whether or not Appellant had requested an attorney; however, he also explained that if an arrestee made such a request, this would be noted in that person's case file and that police would cease all questioning.

In State v. Crump, the defendant made remarks similar to Appellant's. 834 S.W.2d 265, 266 (Tenn. 1992). There, law enforcement officials administered Miranda warnings to the defendant. Id. at 269. A detective testified that Crump responded by saying either "I don't have anything to say right now," or "I don't have anything to say." Id. at 266. After being informed that he was a suspect in another crime different from the one for which he was arrested, Crump replied, "I don't know anything about that." Id. The Tennessee Supreme Court held that Crump's statement, "I don't have anything to say," constituted an unequivocal invocation of his right to remain silent and that police officers were obliged to scrupulously honor this right. Id. at 269-70. The facts of this case are distinguishable from those in Crump. Crump concerned the situation where police persisted in attempting to question the accused after he had invoked his right to remain silent. Here, however, three days elapsed before police again attempted to interrogate Appellant, thereby scrupulously honoring his right to remain silent. An accused's invocation of the right to remain silent does not completely preclude all future attempts to reinterrogate the suspect. see, e.g., Michigan v. Mosley, 423 U.S. 96, 96 S.Ct. 321, 36 L.Ed.2d 313 (1975) (holding that police scrupulously honored accused's right to remain silent by attempting to reinterrogate him only after a two-hour interval and the administration of fresh Miranda warnings).

At the suppression hearing, Appellant testified that he informed police of his whereabouts so that he could be picked up because an officer had telephoned his grandmother and stated that the police wanted to interrogate Appellant regarding a hit-and-run incident. According to Appellant's testimony, officers transported him to the homicide office and then held him in an interview room for two to three hours. At some point, an officer asked Appellant whether

he wished to give a statement, and Appellant replied that he would not do so until he had spoken with a lawyer.

Appellant further testified that he was again brought to the homicide office three days later and that he once more refused to give a statement without an attorney. Despite this refusal, when another officer inquired whether Appellant wished to give a statement, he agreed to do so. According to Appellant, after he gave his statement, he was shackled to a bench for approximately twenty minutes. An officer brought Appellant a statement and directed him to initial each page and to sign the last page. Appellant alleged that the statement contained numerous inaccuracies but acknowledged that the signature on the statement was his own. Finally, Appellant denied that he was ever advised of his constitutional rights before giving his statement.

On cross-examination, Appellant conceded that he had been arrested on burglary and theft charges only one month before being apprehended in connection with the Ferguson homicide. Appellant further admitted that upon being arrested concerning these earlier charges, he gave a statement after officers administered Miranda rights to him.

The trial court found, as a matter of fact, that "no coercion, no violence, and no threats were given or made to the defendant." As the evidence does not preponderate against the trial court's factual findings, we decline to disturb them on appeal. Although Appellant signed no explicit written waiver, a waiver properly may be inferred from the fact that Appellant acknowledged understanding his rights and then gave a statement which he both initialed and signed. State v. Elrod, 721 S.W.2d 820, 823 (Tenn. Crim. App. 1986). The trial court properly denied Appellant's motion to suppress his confession.

## IV. CROSS-EXAMINATION OF A WITNESS TO DEMONSTRATE BIAS

Appellant's third assignment of error is that the trial court improperly excluded evidence of possible bias of a prosecution witness, namely, Mr. Joe Ferguson. We disagree.

At trial, defense counsel sought to ask the victim's brother about a pending civil suit which the victim's family had filed against the Scottish Inn Motel arising out of the same facts being litigated in the criminal prosecution. Apparently, the lawsuit concerned whether or not the Scottish Inn neglected to afford adequate security. Defense counsel argued that the purpose of the inquiry was to demonstrate the possible prejudice of Mr. Joe Ferguson against Appellant because of Ferguson's financial interest in the civil suit. However, the trial court ruled that this testimony was irrelevant to the trier of fact and excluded it.

TENN. R. EVID. 401 provides, "`Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Id. TENN. R. EVID. 616 provides, "A party may offer evidence by cross-examination, extrinsic evidence, or both, that a witness is biased in favor of or prejudiced against a party or another witness." Id. This Court is aware of cases holding that the trial court improperly prohibited defense counsel from questioning the victim in a criminal case as to whether he had brought a civil suit against *the accused* based upon the acts at issue in the criminal case. State v. Horne, 652 S.W.2d 916, 919 (Tenn. 1983). In so holding, the Horne court observed that "great latitude is allowed on cross-examination, particularly cross-examination showing the witness' interest or bias." Id. at 918. Additionally, "The text writers seem to be in accord that for the purpose of showing interest, or bias, a witness for the prosecution in a criminal case may be

questioned as to whether he has brought an action against the accused, based on the acts involved in the criminal case." Id. at 919 (citing C.J.S., vol. 98, Witnesses, Sec. 560; Wharton's Criminal Evidence, 13th Edition, Torcia, Sec. 436; McCormick's Law of Evidence, Chapter 5, Sec. 40.). See also State v. Robert E. Smith, C.C.A. No. 03C01-9203-CR-00067, Hamilton County (Tenn. Crim. App., Knoxville, April 15, 1993) (holding that the trial court abused its discretion in prohibiting defense counsel in a criminal case from questioning the victim as to whether or not she had filed a civil suit against the accused predicated upon the facts being litigated in the criminal prosecution).

The above-cited cases are distinguishable from the present case. Here, defense counsel sought to prove Joe Ferguson's possible bias by questioning the witness regarding a civil suit which Ferguson's family had filed against a third party--the Scottish Inn. Since it is undisputed that the victim in the case at bar was the victim of a homicide perpetrated by someone, we fail to see how cross-examining Joe Ferguson about this lawsuit would demonstrate the witness' possible bias.


## V. DENIAL OF REQUESTED JURY CHARGE

Finally Appellant alleges that the trial court improperly refused to charge the jury that "The law in Tennessee has long recognized that once the homicide has been established, it is presumed to be murder in the second degree." See State v. Brown, 836 S.W.2d 530, 543 (Tenn. 1992). We disagree.

In State v. Phipps, we explained, "`[A] defendant has a constitutional right to a correct and complete charge of the law.'" 883 S.W.2d 138, 142 (Tenn. Crim. App. 1994) (quoting State v. Teel, 793 S.W.2d 236, 249 (Tenn. 1990)). It is not error for the trial court to refuse to give a specially requested jury instruction so

long as the court's instructions "correctly, fully, and fairly set forth the applicable law" in the case. Id. See also State v. Kelly, 683 S.W.2d 1, 6 (Tenn. Crim. App. 1984). On appeal, this Court must "review the entire charge and only invalidate it if, when read as a whole, it fails to fairly submit the legal issues or misleads the jury as to the applicable law."

In the case sub judice, Appellant was charged with the offenses of murder in the perpetration of a robbery and with premeditated first degree murder. However, Appellant was acquitted of premeditated first degree murder and convicted of murder in the perpetration of a robbery. The trial court gave instructions for all of the charged offenses as well as each of their lesser included offenses. These instructions closely followed the jury instructions contained in T.P.I.--CRIM. (4th ed.) § 7.01 et seq. in charging the jury as to first degree murder and all its lesser included offenses. In explaining its refusal to give Appellant's specially requested jury instruction, the trial court acknowledged its familiarity with the Brown decision and reasoned that "the charge that the court will give will adequately cover all degrees of homicide, and the court believes that if it gave this [requested jury instruction] as is that it would confuse the trier of fact. . . ."

In State v. Guadalupe S. Mendez, this Court explained:

> We do not read State v. Brown, 836 S.W.2d 530 (Tenn. 1992), as requiring the invalidation of every first-degree murder case involving the standard T.P.I. jury instructions on first-degree murder. The holding in Brown was based on a sufficiency of the evidence question; our Supreme Court's directive on the jury instruction was directory in nature.

C.C.A. No. 01C01-9206-CC-00186, slip op. at 7, Montgomery County (Tenn. Crim. App., Nashville, April 15, 1993).

Although Appellant's requested jury charge is an accurate statement of Tennessee law, the charge given in this case fully and fairly set forth the

elements of first degree murder and all the lesser degrees of homicide.  See State v. Erica Nelms, C.C.A. No. 02C01-9604-CR-00116, Shelby County (Tenn. Crim. App., Jackson, May 23, 1997) (holding that because Appellant was acquitted of premeditated first degree murder and convicted of felony murder, it was not error for the trial court to refuse to charge the jury that once a homicide has been established, it is presumed to be murder in the second degree).  See also State v. Glenn Mann, C.C.A. No. 02C01-9502-CC-00046, Dyer County (Tenn. Crim. App., Jackson, August 16, 1996).  Moreover, like the Appellant in the Nelms decision, supra, Appellant was convicted of first degree felony murder and acquitted of premeditated first degree murder.  Thus, the trial court properly refused to give the requested charge.  cf. State v. Charles Montague, C.C.A. No. 03C01-9306-CR-00192, (Tenn. Crim. App., Knoxville, November 21, 1994) (holding that any error resulting from the trial court's failure to give the requested instruction that a homicide is presumed to be second degree murder was harmless).

The judgment of the trial court is affirmed.

_____
JERRY L. SMITH, JUDGE

CONCUR:

_____
DAVID G. HAYES, JUDGE


_____
THOMAS T. WOODALL, JUDGE