IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 14, 2010

## GREGORY L. SAIN v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Rutherford County**
**No. F-63338      Don Ash, Judge**

_____

**No. M2010-00654-CCA-R3-PC - Filed April 26, 2011**

_____

On January 24, 2006, a jury convicted the petitioner, Gregory L. Sain, of one count of delivery of a Schedule II drug to a minor, one count of possession of a Schedule II drug with the intent to deliver, one count of introduction of contraband into a penal facility, one count of contributing to the delinquency of a minor, and simple possession of marijuana. A panel of this court affirmed the jury's verdict and modified the petitioner's sentence on March 6, 2008. The petitioner sought post-conviction relief and the same was denied pursuant to an order dated February 19, 2010. On appeal, the petitioner alleges ineffective assistance of counsel at both the trial and appellate levels. The petitioner claims that counsels' performance was deficient because: (1) trial counsel failed to request a *Batson* hearing after the peremptory challenge of an African American female juror; (2) trial counsel failed to conduct a proper investigation into the petitioner's case; (3) trial counsel and appellate counsel both failed to challenge an improper jury instruction. Upon a thorough review of the record and the parties' briefs, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J.C. MCLIN, J., delivered the opinion of the court, in which DAVID H. WELLES and ROBERT W. WEDEMEYER, JJ., joined.

Daryl M. South, Murfreesboro, Tennessee, for the appellant, Gregory L. Sain.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; and William C. Whitesell, Jr., District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Background**

The jury convicted the petitioner of one count of delivery of a Schedule II drug to a minor, a Class B felony, one count of possession of a Schedule II drug with the intent to deliver, a Class B felony, one count of introduction of contraband into a penal facility, a Class C felony, one count of contributing to the delinquency of a minor, a Class A misdemeanor, and simple possession of marijuana, a Class A misdemeanor. Following a sentencing hearing, the trial court sentenced the petitioner as a Range III, persistent offender, to twenty years for each Class B felony conviction, ten years for the Class C felony conviction, and eleven months, twenty-nine days for each misdemeanor conviction. The trial court ordered that the petitioner serve his sentences concurrently, for an effective sentence of twenty years. On appeal, this court affirmed the jury's verdict and modified the petitioner's sentence, determining that the petitioner was a career offender. *See State v. Gregory L. Sain*, M2006-00865-CCAR3CD, 2008 WL 624924 at *1 (Tenn. Crim. App., at Nashville, March 6, 2008). The following is a summary of the facts taken from this court's opinion on direct appeal:

> Merissa Allen testified that she was born on September 19, 1986, and was seventeen years old on September 4, 2004, the date of her encounter with [the petitioner]. Ms. Allen said that she went to the Murfreesboro Billiards Club to meet friends. Approximately one hour after she arrived at the club, Ms. Allen went to the parking lot to get something out of her car. A grey vehicle pulled up behind her car. Ms. Allen said that the driver, whom she later identified as [the petitioner], was the only occupant of the vehicle. [The petitioner] asked Ms. Allen if she knew of any other clubs in the area because he had just been evicted from the Country Club. Ms. Allen told [the petitioner] that Conrad's was located in the Holiday Inn next to the interstate. Ms. Allen said that [the petitioner] handed her something wrapped in a paper towel. [The petitioner] told Ms. Allen to take the package and he would be back later. Ms. Allen said that she felt uncomfortable and scared. Ms. Allen memorized the license tag number of [the petitioner's] vehicle before going back inside the club.
>
> Ms. Allen told Dorothy Foster and Rita Dunn, the co-owners of the club, about the incident, and Ms. Foster called the police. Officer Sean Patrick Garrison with the Murfreesboro Police Department responded to the call approximately five to ten minutes later. Ms. Allen gave the package to Officer Garrison and told him [the petitioner's] license tag number. Ms. Allen believed that Officer Garrison performed a field test on the substance in the package. Ms. Allen said that Officer Garrison then drove to Conrad's to try to locate [the petitioner's] vehicle.

Ms. Allen went back inside the club and joined her friends at a table. A few minutes later, [the petitioner] walked into the Billiards Club and sat down at the bar. Ms. Allen pointed out [the petitioner] to Ms. Foster. [The petitioner] then left the club. Officer Garrison returned to the club, and Ms. Allen identified [the petitioner's] vehicle as it was leaving the club's parking lot. Officer Garrison followed [the petitioner] in his patrol car. A short time later, Officer Garrison returned to the club with [the petitioner] in the back seat of his patrol car. Ms. Allen identified [the petitioner] as the person who had handed her the package earlier that evening.

On cross-examination, Ms. Allen said that her car was parked approximately thirty to forty feet from the entrance of the club and the parking lot was lit. Ms. Allen acknowledged that [the petitioner] did not ask for her name, and she did remember [the petitioner] asking to see her later that night. Ms. Allen said that [the petitioner] did not ask for any money in exchange for the package. Ms. Allen said that [the petitioner] did not approach her when he returned to the Billiards Club.

Officer Garrison testified that he spoke with Ms. Allen who told him that a man had approached her in the club's parking lot and had handed her a wrapped package. Officer Garrison said that Ms. Allen told him that the man had said that Ms. Allen should come to Conrad's later if she "wanted to have a good time because he had $300 worth more with him." Ms. Allen told Officer Garrison that the man was an African-American and was driving a silver car with a Tennessee license tag number of LQD 477. Officer Garrison said that the package contained a white powdered substance which he believed was cocaine.

Officer Garrison drove to Conrad's but did not locate the vehicle described by Ms. Allen. He returned to the Billiards Club to fill out an offense report, and Ms. Allen told him that [the petitioner] had returned to the club but had left again. Officer Garrison and Ms. Allen went outside to fill out the forms. Ms. Allen told Officer Garrison, "That's him right there. He's leaving in his car." Officer Garrison observed a silver Mercury Cougar with license tag number LQD 477 leave the parking lot.

Officer Garrison stated that he was approximately twenty feet from the vehicle. The drivers' side window was down, and Officer Garrison identified [the petitioner] as the driver of the vehicle. [The petitioner] did not stop his vehicle

-3-

when Officer Garrison told him to do so. Officer Garrison got into his patrol car and activated his emergency equipment and the video tape recorder inside the vehicle. Officer Garrison followed [the petitioner's] vehicle through a restaurant parking lot and on to West College Street. [The petitioner] stopped his vehicle about nine-tenths of a mile from the Billiards Club.

Officer Garrison asked [the petitioner] what had transpired at the Billiards Club earlier that night. [The petitioner] acknowledged that he had been at the club but denied any knowledge of the incident described by Officer Garrison. Officer Garrison said that [the petitioner's] pockets contained small torn pieces of a paper towel that were similar to the paper towel package that Ms. Allen had showed him. Officer Garrison placed [the petitioner] under arrest and drove [the petitioner] back to the Billiards Club where Ms. Allen identified him as the individual who had given her the package earlier that evening.

[The petitioner] was taken to the Rutherford County Sheriff's Department for booking. [The petitioner] consented to a search of his person. During the search, [the petitioner] was asked to bend over and squat. Officer Garrison said that he observed a clear plastic baggie protruding from [the petitioner's] buttocks. [The petitioner] resisted the jail personnel's attempt to remove the baggie and was pepper sprayed. Two baggies were removed from [the petitioner] after he was pinned to the ground. The smaller baggie contained what appeared to be a white powder, and the larger baggie contained marijuana.

On cross-examination, Officer Garrison said that he did not run a field test to identify the substance of the package given to Ms. Allen. Officer Garrison said that he went out to his car to retrieve a property envelope in which to store the package. Officer Garrison acknowledged that Ms. Allen provided him more details concerning the motor vehicle driven by [the petitioner] than [the petitioner's] personal appearance.

Deputy Charles Owens with the Rutherford County Sheriff's Department was on duty when [the petitioner] was brought in for booking on September 4, 2004. Deputy Owens testified that Officer Garrison asked the jail staff to search [the petitioner]. [The petitioner] was taken into a room and asked to remove his clothes. Deputy Owens said that [the petitioner] was calm at the beginning of the search. Deputy Owens observed a clear plastic bag protruding approximately two inches from [the petitioner]'s buttocks. Deputy Owens asked [the petitioner] to give them the baggie several times. When [the

-4-

petitioner] did not comply, Deputy Owens and another jail employee grabbed him and tried to retrieve the baggie. [The petitioner] began wrestling with them, and all three fell to the floor. After approximately five minutes, Deputy Owens sprayed [the petitioner] with Freeze Plus P. Nurse Eric Walker removed the baggies after [the petitioner] was subdued.

Rita Dunn testified that she was working at the Billiards Club on September 4, 2004. Ms. Dunn said that Ms. Allen came into the club and said that someone in the parking lot had given her something. Ms. Dunn took the package to the back of the club and called the police.

Glen Glenn testified that he was a special agent forensic scientist with the T.B.I. Agent Glenn said that he received three sealed packets from the Rutherford County Sheriff's Department on August 10, 2005. Two of the packets contained a white powder, and the third packet contained plant material. Agent Glenn testified that testing of the submitted material on August 16, 2005, revealed that packet 01-A contained 0.05 grams of cocaine, packet 02-A contained 0.4 grams of cocaine, and packet 02-B contained 1.3 grams of marijuana. Agent Glenn said that packet 01-A had a piece of paper inside the evidence bag, and the cocaine was inside the paper package.

*Id*. at *1-3.

## Post-Conviction Proceedings

The petitioner filed a timely petition for post-conviction relief on July 1, 2009. After the appointment of counsel, an amended petition for post-conviction relief was filed on January 12, 2010. A post-conviction hearing was held on February 16, 2010. At the hearing, the petitioner explained that in ground one of his original petition for post-conviction relief, he asserted that his attorney in General Sessions Court[1], failed to provide adequate representation which was prejudicial to the petitioner. Specifically, the petitioner stated that his case was "supposed to be settled" in general sessions; however, because his attorney was in another courtroom handling a different case, the judge refused to hear the plea and the cases were bound over to the grand jury.

The petitioner also testified that he informed trial counsel, that he wanted to be consulted and have input regarding the use of peremptory challenges during jury selection.

---

[1] Because the post-conviction in this case pertains to a judgment appealed from in the Circuit Court for Rutherford County, we are not addressing issues pertaining to General Sessions Court.

The petitioner asked trial counsel to request a *Batson* hearing after the district attorney issued a peremptory challenge against an African American female juror. However, a *Batson* hearing was not conducted. During trial counsel's cross-examination, he admitted that he did not have any recollection of the petitioner's request for a *Batson* hearing. Trial counsel also testified that he had no independent memory of the facts associated with the district attorney's challenge in order to determine whether a *Batson* hearing would have been appropriate.

The petitioner also testified that trial counsel did not conduct a proper investigation into the petitioner's case. Specifically, trial counsel did not conduct an independent investigation of the scene or interview the victim. In addition, trial counsel failed to subpoena employees of the Murfreesboro Billiard Club or subpoena surveillance records. The petitioner noted that this evidence was crucial, given that there was discrepancy in the testimony at trial as to whether the petitioner approached Ms. Allen. According to the petitioner, the surveillance would have revealed that he did not approach Ms. Allen. In addition, the surveillance would have also established that both the petitioner and Ms. Allen were inside the club. Because the club was an adult facility, which required that patrons be twenty-one years old to enter, the surveillance would also establish that the petitioner did not have knowledge that Ms. Allen was a minor.

The petitioner also challenged trial counsel's failure to object to improper jury instructions regarding the charge of delivery of a schedule II drug to a minor. The petitioner alleged that the instructions misidentified the elements of the offense because they failed to require the jury to find, beyond a reasonable doubt, that the petitioner had knowledge that the recipient was a minor. According to the petitioner, Ms. Allen's age was a crucial issue throughout the trial. After the trial, the petitioner was represented on appeal by appellate counsel. The petitioner testified that he asked appellate counsel to challenge the jury instructions. However, appellate counsel did not address the issue in his appellate brief. The petitioner argued that the failure of counsel to address the improper jury instructions constituted ineffective assistance of counsel.

The petitioner also testified that he was entitled to post-conviction relief based on a violation of his protection against double jeopardy. The petitioner testified that the same evidence was used to support the charges of possession with the intent to deliver, simple possession, and introduction of contraband into a penal facility.

During trial counsel's direct examination, he stated that he had been an attorney since 1991. According to trial counsel, in preparation for the petitioner's case, he requested discovery from the state and met with the petitioner to discuss the case. During the meeting, trial counsel showed the petitioner the pleadings and witness list provided by the state. Trial

counsel stated that he spoke with the petitioner about witnesses that the petitioner wanted to call. However, trial counsel did not call any witnesses. Instead, he chose to cross-examine the state's witnesses.

After the hearing, the post-conviction court denied post-conviction relief pursuant to an order dated February 19, 2010. On March 15, 2010, the petitioner filed a timely notice of appeal.

## Standard of Review

In order for a petitioner to succeed on a post-conviction claim, the petitioner must prove the allegations set forth in his petition by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f). On appeal, this court is required to affirm the post-conviction court's findings unless the petitioner proves that the evidence preponderates against those findings. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). Our review of the post-conviction court's factual findings is de novo with a presumption that the findings are correct. *Fields v. State*, 40 S.W.3d 450, 457-58 (Tenn. 2001). Our review of the post-conviction court's legal conclusions and application of law to facts is de novo without a presumption of correctness. *Id*.

## Analysis

To establish the ineffective assistance of counsel, the petitioner bears the burden of proving that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense rendering the outcome unreliable or fundamentally unfair. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Arnold v. State*, 143 S.W.3d 784, 787 (Tenn. 2004). Deficient performance is shown if counsel's conduct fell below an objective standard of reasonableness under prevailing professional standards. *Strickland*, 466 U.S. at 688; *see also Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975) (establishing that representation should be within the range of competence demanded of attorneys in criminal cases). A fair assessment of counsel's performance, "requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689; *see also Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). Deference is made to trial strategy or tactical choices if they are informed ones based upon adequate preparation. *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982). The fact that a particular strategy or tactical decision failed does not by itself establish ineffective assistance of counsel. *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996). Once the petitioner proves that counsel's representation fell below a reasonable standard, the petitioner must also prove prejudice. Prejudice is shown if, but for counsel's unprofessional errors, there is a reasonable

probability that the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694. Both deficient performance and prejudice must be established to prove ineffective assistance of counsel. *Id*. at 697. If either element of ineffective assistance of counsel has not been established, a court need not address the other element. *Id.*

## Requirement of a Batson challenge

The petitioner submits that trial counsel provided deficient representation by failing to request a *Batson* hearing after the district attorney issued a peremptory challenge against an African American female juror.

The petitioner has failed to prove by clear and convincing evidence that trial counsel's failure to request a *Batson* hearing constituted deficient performance. However, assuming arguendo that trial counsel's representation fell below professional standards, the petitioner has not provided any argument that the allegedly unprofessional error was prejudicial.

## Requirement of proper investigation and trial preparation

The petitioner also avers that his trial counsel was deficient in his failure to adequately investigate the petitioner's case. Specifically, trial counsel failed to speak to the club owner or other individuals who were present at the establishment on the night of the incident. Trial counsel also failed to subpoena surveillance of the establishment, which the petitioner argues would show that he did not approach Ms. Allen and that he was not aware that Ms. Allen was a minor. At the post-conviction hearing, trial counsel testified that he thought he requested surveillance from the state in a Rule 16 motion. According to trial counsel's recollection, the state, in response, stated that they did not have any surveillance. Trial counsel also testified that because the petitioner believed that the state's witnesses' testimony would be beneficial to him, he decided to cross-examine the state's witnesses rather than calling any defense witnesses.

Trial counsel does not have an absolute duty to investigate particular facts or a certain line of defense; however, trial counsel does have a duty to make a reasonable investigation or to make a reasonable decision that makes a particular investigation unnecessary. *Strickland*, 466 U.S. at 691. In determining whether counsel breached this duty, this court reviews counsel's performance for reasonableness under prevailing professional norms, which includes a context-dependent consideration of the challenged conduct as seen from counsel's prospective at the time. *Wiggins v. Smith*, 539 U.S. 510, 523 (2003) (citations omitted). There is no requirement that counsel investigate every conceivable line of mitigating evidence regardless of how unlikely the effort would be to assist the defendant at sentencing. *Id*. at 533. Likewise, counsel is not required to interview every conceivable

witness. *Hendricks v. Calderon*, 70 F.3d 1032, 1040 (9th Cir. 1995). Counsel's duty to investigate and prepare is not limitless. *See Washington v. Watkins*, 655 F.2d 1346 (5th Cir. 1981). We will not find counsel's performance deficient for failing to unveil all mitigating evidence, if, after a reasonable investigation, nothing has put counsel on notice of the existence of that evidence. *See Babbitt v. Calderon*, 151 F.3d 1170, 1174 (9th Cir. 1998) (citation omitted).

During trial counsel's testimony, he stated that he did not recall whether the owner or manager of the Murfreesboro Billiards Club was called as a witness by the state. However, he did note that if the witness was called, he would have conducted a cross-examination if he thought it would have been beneficial to the petitioner. Trial counsel also testified that after he requested any video surveillance in his Rule 16 motion, he was informed that there was no surveillance available at that time. Trial counsel admitted that the video surveillance may have corroborated the petitioner's contention that he never approached Ms. Allen. However, he also stated that the surveillance would have been very damaging if it showed the petitioner with Ms. Allen.

The petitioner has not established that counsel was deficient for failing to interview the club owner or other individuals at the establishment on the night of the incident. Specifically, the petitioner failed to establish what information would have been discovered with this investigation. The petitioner has also failed to show that trial counsel provided deficient performance in failing to subpoena video surveillance when there has been no showing that any video surveillance actually exists.

**Jury Instructions**

The petitioner also challenges counsel's failure to challenge the jury instructions for the charge of possession with intent to deliver a Schedule II drug to a minor. Tenn. Code Ann. § 39-17-417(a) states that "[i]t is an offense for a defendant to knowingly: (2) [d]eliver a controlled substance." In addition, subsection (k) of the statute provides that "[a] violation of this section or a conspiracy to violate this section where the recipient or the intended recipient of the controlled substance is under eighteen (18) years of age shall be punished one (1) classification higher than provided in subsections (b)-(i)." According to the petitioner, the instructions were improper because they failed to require the jury to find that the petitioner intended to deliver a controlled substance to an individual who he "knowingly" understood to be a minor. In support of his argument, the petitioner relies upon this court's opinion on direct appeal, which provides that ". . . the requirement of a culpable mental state, with respect to each element of the offense, has application only to crimes codified in Title 39." *Gregory L. Sain*, 2008 WL 624924 at *8. However, the state submits that the jury instructions were proper. According to the state, Tenn. Code Ann. § 39-17-417(k), like the

Drug-Free School Zone Act, is not a separate offense or an element of an offense. Rather, it enhances penalties for violations of Tenn. Code Ann. § 39-17-417(b)-(i). Therefore, according to the state, the petitioner's case is analogous to *State v. Smith*[2], where this court determined that the Drug-Free School Zone Act does not require a mens rea because it exists to enhance the penalty for violating Tenn. Code Ann. § 39-17-417. In addition, the state notes that the earlier subsections of Tenn. Code Ann. § 39-17-417 provide specific penalties for various weights of narcotics, but they do not ascribe a mental element of knowledge of the weight sold or delivered.

> The jury instructions given by the trial court were as follows:
> Any person who knowingly possesses, with intent to deliver a controlled substance is guilty of a crime. For you to find the defendant guilty of this offense, the state must prove beyond a reasonable doubt the existence of the following elements:
>
> (1) the defendant knowingly possessed [c]ocaine, a Schedule II controlled substance;
> and
> (2) the defendant intended to deliver such controlled substance. Cocaine is a Schedule II controlled substance;
>
> and
>
> (3) the recipient or intended recipient was under eighteen years of age.
> "Deliver" or "delivery" means the actual, constructive, or attempted transfer from one person to another of a controlled substance, whether or not there is an agency relationship.
>
> It may be inferred from the amount of controlled substances possessed by an offender, along with other relevant facts surrounding the arrest, that the controlled substance or substances were possessed with the purpose of selling or otherwise dispensing them.
>
> "Knowingly" means that a person acts knowingly with respect to the conduct or to the circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist. A person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result.

---

[2] *State v. Smith*, 48 S.W.3d 159, 168 (Tenn. Crim. App 2000)

-10-

In criminal cases, a defendant has the right to a correct and complete charge of the law. *State v. Garrison*, 40 S.W.3d 426, 432 (Tenn. 2000). Thus, it follows that the trial court has a duty to give a complete charge of the law applicable to the facts of a case. *State v. Thompson*, 519 S.W.2d 789, 792 (Tenn. 1975). The failure to do so deprives the defendant of the constitutional right to a jury trial. *Garrison*, 40 S.W.3d at 432. In evaluating claims of error in the jury charge, this court must review the charge in its entirety and read it as a whole. *State v. Leach*, 148 S.W.3d 42, 58 (Tenn. 2004). A jury instruction is considered "prejudicially erroneous if it fails to fairly submit the legal issues or if it misleads the jury as to the applicable law." *State v. Hodges*, 944 S.W.2d 346, 352 (Tenn. 1997). Notably, when jury instructions fully and fairly state the applicable law, a trial court is not required to provide special instructions. *State v. Mann*, 959 S.W.2d 503, 521 (Tenn. 1997); *State v. Kelley*, 683 S.W.2d 1, 6 (Tenn. Crim. App. 1984).

The post-conviction court reviewed the challenged jury instructions, and concluded that the jury was properly instructed.

We conclude that the jury instructions provided a correct and complete charge of the applicable law. Because Tenn. Code Ann. §39-17-417(k) enhances the punishment provided in subsections (b)-(i), no specific mens rea is required. Therefore, trial counsel was not deficient for failing to object to proper jury instructions at trial, nor appellate counsel for not addressing the issue on appeal.

## Conclusion

Based upon the foregoing authorities and reasoning, we affirm the judgment of the post-conviction court.

_____
J.C. McLIN, JUDGE